IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:24-CV-59-FL

| | | |
|---|---|---|
| SUCCESSOR S. BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MUNICIPALITY ROBERSONVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court upon defendant's motion to dismiss (DE 23) pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). Plaintiff responded in opposition, and in this posture the issues raised are ripe for ruling. For the following reasons, defendant's motion is granted in that part seeking dismissal of plaintiff's federal claim, and the court declines to exercise jurisdiction over plaintiff's state law claims.

## STATEMENT OF THE CASE

Plaintiff commenced this civil rights and tort action April 2, 2024. Following several deficiency orders, plaintiff filed July 8, 2024, the operative complaint,[1] which the court allowed to proceed August 1, 2024.[2] Therein, plaintiff alleges defendant allowed several trespassers and "accomplices names unknown to seize and steal and damage property with no legal order nor due

---

[1] Hereinafter, all references to the complaint and "compl." in citations refer to plaintiff's corrected complaint filed at docket entry (DE) 14.

[2] In particular, the court determined that "dismissal of the action for failure to prosecute at this juncture is not warranted," and the court directed the clerk to "sign, seal, and issue a single summons to plaintiff for service on defendant 'Municipality Robersonville.'" (Order (DE 18) at 4).

process or opportunity to be hear[d]." (Compl. (DE 14) at 1). Plaintiff asserts a federal law claim under 42 U.S.C. § 1983 for violation of his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution. He also asserts state law claims for trespass, failure to discharge duties, and conversion. Plaintiff seeks relief in the form of "recover[y] [of] personal property" and "pecuniary award for chattel and real estate taken wrongfully and unlawfully." (Id.). He also seeks a judgment "to confirm resulting trust right in property," to "nullify any sole ownership claim of SPOUSE from resulting trust property and heir property," for "arrest of Trespasser," to "restore . . . electricity," as well as compensatory and punitive damages. (Id. at 24-25).

Defendant filed the instant motion seeking dismissal on the basis of 1) insufficient service of process, 2) failure to state a claim for a federal constitutional violation resulting from municipal policy or custom, and 3) governmental immunity and public duty doctrine under North Carolina law. Defendant relies upon an affidavit of Tina Brown, mayor of Robersonville, as to the manner in which the summons and complaint was received. Plaintiff responded in opposition, and he also filed separately on October 21, 2024, an "affidavit of service." (DE 27).

## STATEMENT OF FACTS

Although the complaint is not a model of clarity, the court summarizes herein factual allegations pertinent to the analysis. Plaintiff alleges in the complaint that his property at "402 Green" in Robersonville, North Carolina, was occupied by "trespasser[s] without consent" resulting in "theft of utility," and they "refuse[d] to go after being asked." (Compl. ¶ 68). He further suggests that a "Municipality manager was aware of trespass and theft of electricity," and "Municipality police refus[ed] to arrest those for trespass." (Id. ¶ 75).

Plaintiff alleges that "[t]hrough chicanery under color of law Municipality allowed Derek Boyd himself and perpetrated through Mrs. Peggy Matthewson Wilson and her husband and others steal with no notice and no permission important and valuable chattel property and other items which there is interest rights from real estate in Martin county." (Id. ¶6).[3] According to the complaint, a call was placed to the police, and "[t]here was law enforcement that came but did not communicate and did not interrogate Trespasser." (Id. ¶ 12). A request was made to defendant to "terminate electricity" but "dispatch personnel Baker would not refer message request to Defendant." (Id. ¶ 13).

Plaintiff made additional attempts to contact various town and police officials, but no action was taken to remove the alleged trespassers. For example, plaintiff contacted a county district attorney, but that district attorney "instruct[ed] interim Municipality police Mr. Chris Garrett to do nothing until title search by lawyer retain by Plaintiff present as proof." (Id. ¶ 27). Plaintiff makes the following allegation about his contact with a town commissioner:

> December Municipality commissioner Ms. Chiquita Ward at 252 809 2902 claim town has nothing to do with it and town will not cease electricity when there are occupant cause some one other than with authority could have been accord permission to be there notwithstanding utility theft with no permission and tenant in common undivided interest property right unanimous consent on use and occupant.

(Id. ¶ 31). A request was made to animal control to take animals on the property, but it "instead informed Municipality police . . . not to take any animal." (Id. ¶ 34).

Plaintiff further alleges that a "SPOUSE Boyd . . . had a will prepared that claimed ownership another real estate in Municipality paid entirely from separate estate of wife . . . and left to one SCION D. Boyd," ("SCION") and that "SCION manipulated and took advantage of clerk

---

[3] In all quotations of allegations in the complaint, syntax and punctuation remain as in original. The court takes judicial notice that Robersonville is in Martin County, North Carolina.

to get papers and presented Municipality . . . recognize as sole owner of real estate in Martin county." (Id. ¶ 41). Then,

> Per direction of SCION Municipality terminated utilities to property notwithstanding Plaintiff had prepaid Municipality to continue utilities and informed Municipality of assumption of obligation for utilities and where to forward utilities statement. The property has essentially being abandoned by SCION as lawn care and property maintenance was by Plaintiff.

(Id. ¶ 42). In addition:

> Efforts to get Municipality to resume utilities was made from April to November on challenge to clerk testamentary letter alleged presented to town, as Municipality refused to forward copy as requested. Municipality refused to recognize that the property from title deed under law then and grantor intent at moment created was resulting trust for grantor.

(Id. ¶ 43). Finally:

> SCION aided and abetted by Municipality under color of law was continually allowed Mrs. Peggy Matthewson Wilson and her husband break into real estate and change locks to take items of chattel at the real estate that was not the property of the SPOUSE estate and rob the place with no notice to those whose property they were taking.

(Id. ¶ 51).

**COURT'S DISCUSSION**

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[4]

B. Analysis

1. Federal Claim

Defendant argues that plaintiff fails to state a claim under § 1983, because plaintiff does not allege a constitutional violation resulting from a policy or custom of defendant. The court agrees.

A local government entity may be sued under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" to the plaintiff. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (emphasis added).

As an initial matter, plaintiff does not allege that "the existence of a policy, or any part of it, was the cause of his injury." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). "While municipal policy is most easily found in municipal ordinances, it may also be found in formal or informal ad hoc policy choices or decisions of municipal officials authorized to make

---

[4] Internal citations and quotation marks are omitted from all citations unless otherwise specified. Where the court does not reach that part of defendant's motion based upon insufficient service of process, the court does not set forth here the standard of review for motions under Rule 12(b)(2) and 12(b)(5).

and implement municipal policy." Edwards v. City of Goldsboro, 178 F.3d 231, 244–45 (4th Cir. 1999). "A final policymaker for the purposes of municipal liability is someone who has the responsibility and authority to implement final municipal policy with respect to a particular course of action." Lytle, 326 F.3d at 472. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

Plaintiff suggests in his complaint that his due process and equal protection violations resulted from a failure to act on the part of police and municipal officials. However, plaintiff does not identify any "express policy," nor municipal "decisionmaker [who] possesse[d] final authority to establish municipal policy," with respect to the alleged failure to act, here allegedly failing to remove trespassers from plaintiff's property. Lytle, 326 F.3d at 472; Pembaur, 475 U.S. at 481. Indeed, he alleges that a municipal police official followed the direction of a county district attorney "to do nothing until title search by lawyer retain by Plaintiff present as proof." (Compl. ¶ 27).

Additional allegations are too vague or conclusory to give rise to an inference of municipal policy. For example, plaintiff refers to a statement by "commissioner Ms. Chiquita Ward" claiming the "town has nothing to do with it and town will not cease electricity when there are occupant[s]." (Id. ¶ 31). He also alleges that it "Municipality lawyer Mr. James R. Bachelor" spoke with interim police chief, and "it did not matter what Municipality lawyer had to say with final result that left Trespasser et alia to remain on property and . . . electricity allowed to continue." (Id. ¶ 18).

As an initial matter, plaintiff has not alleged facts permitting an inference that that any individual employee of defendant committed a constitutional violation by allowing occupants and

6

utilities to remain on at the property, particularly in light of plaintiff's own allegations regarding issues raised concerning succession, an "estate," and "sole" ownership of the property by "SCION." (Id. ¶¶ 38-43, 51). Where "there are no underlying constitutional violations by any individual, there can be no municipal liability." Young v. City of Mt. Ranier, 238 F.3d 567, 579 (4th Cir. 2001). Further, these allegations do not permit an inference that the referenced city employees had both "the responsibility and authority to implement final municipal policy with respect to a particular course of action." Lytle, 326 F.3d at 472.

With respect to a Monell claim based upon a failure to train, failure to supervise, or custom and usage, "[a] plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014). A plaintiff must allege "continued inaction in the face of documented widespread abuses," Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999), such as through allegations of "the existence of reported and unreported cases and numerous successful motions which, if true, would buttress" an assertion of a custom or usage. Owens, 767 F.3d at 403; see Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983) ("Generally, a failure to supervise gives rise to § 1983 liability, . . . only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel."). At bottom "proof of a single violation will not support the inference that the violation resulted from a municipal 'policy' of deficient training," or a "custom of comparable practices." Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987).

Here, plaintiff fails to allege a "persistent and widespread practice of municipal officials," Owens, 767 F.3d at 402, or "continued inaction in the face of documented widespread abuses,"

7

Grayson, 195 F.3d at 697. Rather, he alleges only a "single violation," the deprivation of his due process and equal protection rights as it pertains to his alleged property at "402 Green," (compl. ¶ 68), which is insufficient to state a Monell claim. Spell, 824 F.2d at 1391. Further, plaintiff's suggestion that trespassers are present in Robersonville or at other locations, (e.g., compl. ¶¶ 38, 65), are too general and conclusory to meet the standard of "documented widespread abuses." Grayson, 195 F.3d at 697, or "widespread practice of municipal officials" in this defendant town. Owens, 767 F.3d at 402,

In sum, plaintiff fails to state a § 1983 claim under Monell. Therefore, defendant's motion must be granted in this part for failure to state a claim upon which relief can be granted.

2. State Law Claims

A district court "may decline to exercise supplemental jurisdiction over [pendent state law] claim[s] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). When such a case originates in federal court, the "court should decline the exercise of jurisdiction by dismissing the [pendent state-law claims] without prejudice." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, (1988).

Here, where plaintiff's sole federal claim has been dismissed, the court declines to exercise jurisdiction over plaintiff's state law claims. This decision is informed particularly by the nature of those claims and the suggested relationship between those claims and matters of estate and property administration.

8

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 23) is GRANTED in that part pertaining to plaintiff's federal claim under 42 U.S.C. § 1983, which is DISMISSED under Rule 12(b)(6). The court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and such claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the court does not reach defendant's additional grounds for dismissal and its motion to dismiss is DENIED in remaining part without prejudice. The clerk is DIRECTED to close this case.

SO ORDERED, this the 4th day of December, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge